UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN MERCADO a/k/a DEBRA MERCADO,

Plaintiff,

-v-

UTOMI HAIDOME,

Defendant.

CIVIL ACTION NO. 24 Civ. 2784 (AT) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE ANALISA TORRES**, United States District Judge:

## I.INTRODUCTION

Plaintiff Christian Mercado a/k/a Debra Mercado ("Ms. Mercado"),[1] proceeding pro se,

sues under 42 U.S.C. § 1983, alleging that Defendant Utomi Haidome, ("Officer Haidome"), an

officer with the New York City Department of Corrections ("DOC"), violated her First Amendment

right to free exercise of her Wiccan religion while she was a pretrial detainee at the Otis Bantum

Correctional Center ("OBCC") at Rikers Island in 2023.    (Dkt. No. 1 (the "Complaint")).

Officer Haidome now moves for summary judgment pursuant to Federal Rule of Civil

Procedure 56, arguing that Ms. Mercado failed to exhaust her First Amendment claim, which, in

the alternative, he argues fails as a matter of law.  (Dkt. Nos. 30 (the "Motion"); 31; 31-1; 32

(the "56.1 Statement"; 33; 34 (the "56.2 Notice")).    Ms. Mercado opposed the Motion

(Dkt. Nos. 39–39-7; 41; 43 ("Ms. Mercado's 56.1 Statement," with Dkt. Nos. 39–39-7 and 41, the

---

[1] Ms. Mercado refers to herself as Debra, so we employ female pronouns.  (See Dkt. Nos. 1 at 4; 17 at 1).

"Opposition")),[2] which the Honorable Analisa Torres has referred for this Report and Recommendation.  (Dkt. No. 36).

For the reasons set forth below, we respectfully recommend that the Motion be **GRANTED** and Ms. Mercado's claim be **DISMISSED WITH PREJUDICE**.

## II. BACKGROUND

A party moving for summary judgment must, under Local Rule 56.1(a), submit a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  In response, the non-moving party must submit "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).

In response, the nonmoving party "must cite to evidence that would be admissible at trial to show that the controverted statement is, in fact, in dispute[,]" and the failure to cite such admissible evidence will result in the statement being deemed admitted.  Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011).[3]  Where the nonmoving party is pro se, the moving party must also serve a notice pursuant to Local Civil Rule 56.2 advising the nonmovant of the consequences of failing to respond to the motion in a timely manner and with

---

[2] Ms. Mercado filed three submissions in response to the Motion, which the Court agreed to consider as a consolidated Opposition because they did not contain additional factual allegations beyond what she included in the Complaint.  (See Dkt. Nos. 39–44).

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

the documents required by Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56.1.  Local

Civ. R. 56.2.  "A pro se litigant is not excused from" complying with Local Civil Rule 56.1, Brandever

v. Port Imperial Ferry Corp., No. 13 Civ. 2813 (KBF), 2014 WL 1053774, at *3 (S.D.N.Y.

Mar. 13, 2014), and "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits

the court to conclude that the facts asserted in the statement are uncontested and admissible."

T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009); Vasquez v. Reilly, No. 15 Civ. 9528

(KMK), 2018 WL 2768648, at *1 n.1 (S.D.N.Y. June 8, 2018).

Here, Officer Haidome filed and served his 56.1 Statement with the 56.2 Notice.

(Dkt. Nos. 32; 34).  In response, Ms. Mercado's 56.1 Statement references several documents but

does not dispute the facts in Officer Haidome's 56.1 Statement.  (Dkt. No. 43).  The only fact in

Officer Haidome's 56.1 Statement to which Ms. Mercado responds is the first, which states: "On

December 20, 2023, [Ms. Mercado] was incarcerated at [OBCC], located on Rikers Island, for a

charge of Murder in the Second Degree, for which [she] pled guilty."  (Dkt. No. 32 at 1 ¶ 1 (record

citation omitted)).  In response, Ms. Mercado states that her "murder charge has nothing to do

with this civil rights case."  (Dkt. No. 43 at 2 ¶ 1).  None of the other six paragraphs of

Ms. Mercado's 56.1 Statement correspond to the factual assertions in Officer Haidome's 56.1

Statement.  (Compare Dkt. No. 32, with Dkt. No. 43).

Accordingly, we deem the facts in Officer Haidome's 56.1 Statement admitted.  See Genao

v. City of New York, No. 21 Civ. 301 (AT) (VF), 2024 WL 947439, at *1 (S.D.N.Y. Jan. 4, 2024)

(disregarding pro se plaintiff's assertions that lacked record citations or evidentiary support),

adopted by, 2024 WL 515246 (S.D.N.Y. Feb. 9, 2024); Bryan v. Mem'l Sloan Kettering Cancer Ctr.,

No. 18 Civ. 1300 (AT) (SLC), 2022 WL 4096862, at *2 (S.D.N.Y. May 18, 2022) (deeming admitted

statements in defendants' Rule 56.1 statement that plaintiff disputed without citation to admissible evidence), adopted by, 2022 WL 4096897 (S.D.N.Y. Sept. 7, 2022).

Nevertheless, given the "special solicitude" we must afford Ms. Mercado as a pro se litigant, Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988), we exercise our discretion to "conduct an assiduous review of the record," Dumel v. Westchester Cnty., 656 F. Supp. 3d 454, 457 n.2 (S.D.N.Y. 2023), and summarize the facts "in the light most favorable to" her as the nonmovant. Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018); accord Vasquez v. Cnty. of Rockland, No. 13 Civ. 5632 (SLC), 2020 WL 883514, at *1 (S.D.N.Y. Feb. 24, 2020); Reilly, 2018 WL 2768648, at *1 n.1 (collecting cases in which courts conducted independent review of the record where pro se plaintiff failed to submit a proper Rule 56.1 statement). In doing so, for example, we take as true Ms. Mercado's descriptions in her Complaint, in her deposition testimony, and in her Opposition of Officer Haidome's statements to her on December 20, 2023. (Dkt. Nos. 1 at 4; 31-1 at 9–19; 41 at 2).

## A. **Factual Background**

On December 20, 2023, Ms. Mercado was detained in OBCC on a charge of second-degree murder, to which she later pled guilty. (Dkt. Nos. 1 at 2, 4; 31-1 at 4:24, 16:11–13; 32 at 1 ¶ 1). Around 9:30 p.m., Ms. Mercado "was doing [her] Wiccan prayers" in her cell during headcount. (Dkt. Nos. 1 at 4; 31-1 at 6:9–10, 19:4–6; 32 at 1 ¶ 2).[4] Officer Haidome, who was passing by her cell for the headcount, said "get that faget [sic] devil worrshiping [sic] shit out of here . . . your [sic] [] better off becoming a Christian." (Dkt. Nos. 1 at 4; 31-1 at 6:10–11; 32 at 2 ¶ 3).

---

[4] "Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity . . . Its practices include the use of herbal magic and benign witchcraft." O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400 (7th Cir. 2003).

Ms. Mercado "ignored him" and "fin[]ished [her] prayers[.]"  (Dkt. No. 31-1 at 6:12–22; 32 at 2 ¶¶ 3-4).[5]  We refer to Ms. Mercado's interaction with Officer Haidome on December 20, 2023 as the "Incident."

Ms. Mercado did not sustain any physical injuries from the Incident but contends that she is now "afraid to pray in front of" a corrections officer.  (Dkt. No. 31-1 at 12:8–14).  She does continue to "pray at nighttime" and avoids praying "in the morning" when corrections officers "do their tour."  (Dkt. Nos. 31-1 at 12:16–19, 13:20–24, 14:18–24; 32 at 2 ¶ 6).

On December 21, 2023, the day after the Incident, Ms. Mercado submitted one grievance form, in which she asserted that her "religious right[s]" had been violated (Dkt. No. 39-1 (the "Grievance")), and on December 28, 2023, January 5, 2024, and January 10, 2024, made three 311 complaints (the "311 Complaints").[6]  (Dkt. Nos. 31-1 at 8:17–19, 18:14–22; 32 at 2 ¶ 7; 39-2; 39-5).  During Captain Ashlei Peterson's investigation of the Grievance, Officer Haidome denied ever speaking about an inmate's religious preference and Ms. Mercado allegedly refused to provide a written or verbal statement.  (Dkt. Nos. 39-2; 39-3; 39-7).[7]  On June 14, 2024, Captain Peterson found the Grievance "unsubstantiated."  (Dkt. No. 39-2 (the "Disposition")).  Ms. Mercado did not appeal the Disposition or otherwise follow up on the Grievance or on the 311 Complaints.  (Dkt. Nos. 31-1 at 8:17–25, 18:20–22; 32 at 2 ¶ 7).

---

[5] Ms. Mercado's recounting of Officer Haidome's statements differs slightly between the Complaint, her deposition testimony, and the Opposition but the overall meaning is the same and any difference is not material to our analysis.  (Compare Dkt. No. 1 at 4, with Dkt. No. 31-1 at 6:7–22 and Dkt. No. 41 at 2).

[6] 311 is a method to contact "non-emergency [New York] City services."  About NYC311, https://portal.311.nyc.gov/about-nyc-311/ (last visited October 31, 2025).  The 311 Complaints, in this context, refer to the complaints Ms. Mercado made against Officer Haidome that were "submitted to the City of New York via NYC.gov or the 311 Call Center . . . [and] forwarded to [Ms. Mercado's] agency by the 311 Customer Service Center."  (Dkt. No. 39-5 at 1, 2–3).

[7] Ms. Mercado appears to dispute that Captain Peterson spoke to her and that she refused to "fill out" or "sign" a statement.  (Dkt. Nos. 39-2; 39-3; 39-7 at 1).

B. **Procedural History**

On January 17, 2024,[8] Ms. Mercado filed the Complaint, in which she recounted the Incident and asserted that Officer Haidome "violated [her] right to any religious belief" and her "LGBTQ rights because [she is] a transgender female." (Dkt. No. 1 at 4–5). At an initial case management conference in which Ms. Mercado participated, the Court set a fact discovery deadline of March 10, 2025, and directed the DOC to produce to Ms. Mercado any written statements she made in June or July 2024 concerning the Incident. (Dkt. No. 20 (the "CMP"); Dkt. minute entry Dec. 16, 2024). Following conferences on February 18, 2025, March 4, 2025, and April 7, 2025, the Court extended the fact discovery deadline to March 31, 2025, April 30, 2025, and May 30, 2025, respectively. (Dkt. Nos. 21; 22; 23; Dkt. minute entries dated Feb. 18, 2025, Mar. 4, 2025, Apr. 7, 2025). Ms. Mercado sat for her deposition on May 28, 2025, and on June 6, 2025, the parties certified that fact discovery was complete. (Dkt. Nos. 25; 26; 31-1).

On July 21, 2025, Officer Haidome filed the Motion. (Dkt. Nos. 30–34). After Ms. Mercado missed the deadline to oppose the Motion, the Court sua sponte granted her additional time to do so. (Dkt. No. 38). On September 2, 2025, September 15, 2025, and September 22, 2025, Ms. Mercado filed what the Court has deemed the Opposition, including Ms. Mercado's 56.1 Statement. (Dkt. Nos. 39–44). In the Opposition, Ms. Mercado repeats the description of the Incident in the Complaint and asserts that no one spoke to her about her Grievance, nor did she

---

[8] "[A] pro se prisoner's complaint is considered filed as of the date that the plaintiff delivers the complaint to prison officials to be filed." Stokes v. de Blasio, No. 17 Civ. 7890 (JGK), 2019 WL 132279, at *3 n.3 (S.D.N.Y. Jan. 8. 2019) (citing Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993)).

refuse to sign it.  (Dkt. Nos. 39 at 1, 3–4; 41 at 2; 43 at 2–3).  On October 10, 2025, Officer Haidome filed a reply and a response to Ms. Mercado's 56.1 Statement.  (Dkt. Nos. 45–46).

### III. DISCUSSION

Liberally construing the Complaint, Ms. Mercado claims that Officer Haidome's comments during the Incident infringed her First Amendment right to practice her religion of choice, Wiccan. (See Dkt. Nos. 1 at 4 (the "First Amendment Claim"); 39 at 4).[9]  In the Motion, Officer Haidome argues that Ms. Mercado (1) failed to exhaust her First Amendment Claim pursuant to the Prison Litigation Reform Act ("PLRA"), and (2) her First Amendment Claim fails as a matter of law. (Dkt. No. 33 at 5–9).

### A. Legal Standards

#### 1. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317,

---

[9] In her Complaint and 56.1 Statement, Ms. Mercado references her "LGTBQ rights" and "sex[u]al identity."  (Dkt. No. 1 at 4; 41 at 2; 43 at 3 ¶ 7).  Officer Haidome does not directly address the merits of this potential theory of liability, except to object that Ms. Mercado "does not properly cite to or attach any admissible evidence in support of this statement as required by Fed. R. Civ. P. 56 and Local Civil Rule 56.1", and in any event, "these facts are not material to [Officer Haidome's] [M]otion."  (See Dkt. Nos. 33; 45; 46).  To the extent that Ms. Mercado seeks to assert an Equal Protection claim under Section 1983 based on her status as a transgender female, however, she has failed to allege and establish that Officer Haidome not only "singl[ed her] out" because of her status, but also that "similarly situated persons have been treated differently."  Braxton/Obed-Edom v. City of New York, 368 F. Supp. 3d 729, 740 (S.D.N.Y. 2019) (quoting Gagliardi v. Vill. of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) and dismissing equal protection claim of transgender pretrial detainee for failure to allege that similarly situated non-transgender inmates were treated differently).  In addition, Ms. Mercado did not assert in the Grievance that the Incident had any connection to her transgender status, (Dkt. No. 39-1), so for the reasons set forth in section III.B.1, infra, this claim is also unexhausted.  Accordingly, to the extent that Ms. Mercado asserts an Equal Protection claim, that claim also fails.

322 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017); Byrd v. City of New York, No. 17 Civ.

2166 (AJP), 2018 WL 259316, at *3 (S.D.N.Y. Jan. 2, 2018).  "On a motion for summary judgment,

the moving party bears the initial burden of establishing that no genuine factual dispute exists,"

and if the movant satisfies that burden, "the burden shifts to the nonmoving party to 'set forth

specific facts showing that there is a genuine issue for trial' . . . and to present such evidence that

would allow a jury to find in his favor."  Blue v. City of New York, No. 14 Civ. 7836 (VSB), 2018 WL

1136613, at *5 (S.D.N.Y. Mar. 1, 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).

To overcome a summary judgment motion, the nonmoving party "'must do more than

simply show that there is some metaphysical doubt as to the material facts.'"  Blue, 2018 WL

1136613, at *5 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986)).  The nonmoving party must "cit[e] to particular parts of materials in the record" to show

that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); see Blue, 2018 WL 1136613, at *5;

Byrd, 2018 WL 259316, at *3.  Where a party fails to properly address another party's assertion

of fact as required by Rule 56(c), the Court may, "consider the fact undisputed for purposes of

the motion," or "grant summary judgment if the motion and supporting materials — including

the facts considered undisputed — show that the movant is entitled to it[.]"  Fed. R. Civ. P.

56(e)(2), (3); see Blue, 2018 WL 1136613, at *5.

Presented with a motion for summary judgment, the Court does not resolve contested

issues of fact but rather determines whether any disputed issue of material fact exists.  See

Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Byrd, 2018 WL

259316, at *4.  The applicable substantive law determines which facts are material "and which

facts are irrelevant." Byrd, 2018 WL 259316, at *4. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995); see Wandering Dago, 879 F.3d at 30; see also Reilly, 2018 WL 2768648, at *4–5. Summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002); see Byrd, 2018 WL 259316, at *4 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

As explained above (see § II, supra), we have afforded Ms. Mercado, a pro se litigant, "special solicitude" in analyzing the Motion. Lewinski, 848 F.2d at 344. This has included reading the Complaint and the Opposition "liberally and interpret[ing] them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999); see Hughes v. Rowe, 449 U.S. 5, 9 (1980) (noting that submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers"). Still, Ms. Mercado's pro se status "does not exempt [her] from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (explaining that nonmoving pro se litigant "must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial"); Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (explaining that

9

nonmoving pro se plaintiff's "bald assertion, completely unsupported by evidence, [was] not sufficient to overcome a motion for summary judgment.").

### 2. Section 1983

"Section 1983 grants a right of action to any 'citizen of the United States or other person within the jurisdiction thereof' who has been deprived of 'any rights, privileges, or immunities secured by the Constitution' or federal law by a person acting under color of state law." Hirsch v. City of New York, 300 F. Supp. 3d 501, 508 (S.D.N.Y. 2018) (quoting 42 U.S.C. § 1983), aff'd, 751 F. App'x 111 (2d Cir. 2018). Section 1983 "itself creates no substantive rights," but rather "provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). A plaintiff asserting a Section 1983 claim must show that, "while acting under color of state law, Defendants deprived [her] of a federal constitutional or statutory right." Blackson v. City of New York, No. 14 Civ. 452 (VEC), 2014 WL 6772256, at *2 (S.D.N.Y. Dec. 2, 2014) (citing McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007)).

To state a Section 1983 claim, "a plaintiff must allege that [s]he was injured either by a state actor or a private party acting under color of state law." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002). "To act under color of state law or authority for purposes of Section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Savarese v. City of New York, 547 F. Supp. 3d 305, 337 (S.D.N.Y. 2021) (quoting Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997)). The burden is on the plaintiff to indicate that "the challenged action was 'fairly attributable to the State.'" Vasquez v. Garcia, 432 F. Supp. 3d 92, 97 (D. Conn. 2019) (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 936–37 (1982)).

### 3. PLRA

#### a. Statutory Exhaustion

A pre-trial detainee asserting a Section 1983 claim must first exhaust her administrative remedies in accordance with the PLRA.  See Ruggiero v. Cnty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006); Massey v. City of New York, No. 20 Civ. 5665 (GBD) (DF), 2021 WL 4943564, at *1, 7 (S.D.N.Y. Aug. 30, 2021) ("Massey I") (applying PLRA exhaustion requirements to pre-trial detainee), adopted by, 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021), aff'd, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); Arnold v. Westchester Cnty., No. 09 Civ. 3727 (JSR) (GWG), 2010 WL 3397375, at *4–6 (S.D.N.Y. Apr. 16, 2010) (same), adopted as modified by, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010).  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[,]'" or allege excessive force, the denial of adequate medical care, or another wrong.  Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524, 532 (2002)); see Ross v. Blake, 578 U.S. 632, 639 (2016) (holding that PLRA's "mandatory exhaustion regime[] foreclos[ed] judicial discretion" to craft exceptions to exhaustion requirement).

Exhaustion under the PLRA means "proper exhaustion" of administrative remedies, i.e., "exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'" Lucente v. Cnty. of Suffolk, 980 F.3d 284, 311 (2d Cir. 2020) (quoting Woodford v. Ngo, 548 U.S. 81, 90–91 (2006)).  Proper exhaustion requires "using all steps that the agency holds out, and

doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Woodford</u>, 548 U.S. at 90; <u>see</u> <u>also</u> <u>Lowman v. Baird</u>, No. 16 Civ. 6518 (VSB), 2017 WL 6403519, at *5 (S.D.N.Y. Dec. 14, 2017) ("The PLRA requires 'proper exhaustion,' which obligates prisoners to 'complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself.'") (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007)).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, <u>see</u> <u>Johnson v. Rowley</u>, 569 F.3d 40, 45 (2d Cir. 2009), and thus a pre-trial detainee "need not plead administrative exhaustion in his complaint." <u>Hickman v. City of New York</u>, No. 20 Civ. 4699 (RA) (OTW), 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021).

### b. **DOC Exhaustion Procedures**

Pursuant to Directive 3376R-A (the "Directive"), DOC "maintains a robust administrative grievance procedure — the Inmate Grievance and Request Program ["IGRP"][10] — for inmates [and pre-trial detainees] at all of its facilities[,]" including those at Rikers Island. <u>Leneau v. City of New York</u>, No. 16 Civ. 0893 (RA), 2018 WL 583120, at *2 (S.D.N.Y. Jan. 26, 2018); <u>see</u> <u>Hickman</u>, 2021 WL 3604786, at *3 ("At Rikers Island, grievance procedures are governed by the [IGRP].").[11]

---

[10] The IGRP is also referred to as the "Inmate Grievance Resolution Program." <u>See</u> Directive, https://www.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf (last visited Nov. 4, 2025).

[11] We take judicial notice of the IGRP as set forth in the Directive in analyzing the Motion. <u>See</u> <u>House v. City of New York</u>, No. 18 Civ. 6693 (PAE) (KNF), 2020 WL 6891830, at *9 (S.D.N.Y. Nov. 24, 2020) (taking judicial notice of IGRP on motion for summary judgment); <u>Sanders v. City of New York</u>, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *4 n.1 (S.D.N.Y. June 25, 2018) ("It is a 'common practice in this District' to take 'judicial notice of the version of the IGRP in effect at the time of the events giving rise to [a prisoner's] claim.'") (quoting <u>Leneau</u>, 2018 WL 583120, at *2); <u>see</u> <u>also</u> <u>Evans v. N.Y. Botanical Garden</u>, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."). The Directive was in effect on December 20, 2023 and is

The IGRP "affords inmates access to information and services relating to their confinement, solve[s] problems, [and] assists inmates who request information, services, assistance, and accommodations."  IGRP § I.  The IGRP applies to complaints based on the conditions of confinement, see Taylor v. N.Y.C. Dep't of Corr., 849 F. App'x 5, 6 (2d Cir. 2021) (summary order) (recognizing that IGRP applied to inmate's complaint "that he was given inadequate clothing in prison, and that he experienced difficulty in mailing legal correspondence and accessing legal services"), including First Amendment claims.  See Blocker v. City of New York, No. 14 Civ. 7215 (PKC), 2015 WL 4002588, at *2 (S.D.N.Y. July 1, 2015) ("Claims under the Free Exercise Clause of the First Amendment . . . are covered by the IGRP.").

> The IGRP requires an inmate with a grievance to:
>
> first either file a grievance, using the Form 7101R ("OCGS Statement Form"), or call 311 to file a complaint.  IGRP §§ V(F), (H).  Within seven business days, the Grievance Coordinator will assess the inmate's submission and determine whether it should be dismissed and closed, referred to a different entity, or investigated further.  IGRP § VI(A)(1).  Upon the close of a further investigation, the Grievance Coordinator will meet with the inmate to propose a resolution.  Id. If the inmate is not satisfied with the proposed resolution of the grievance, [s]he can then appeal to the Commanding Officer.  Id. § VII(A).  If the inmate is dissatisfied with the decision of the Commanding Officer, [s]he may then submit an appeal to the Division Chief.  Id. § VIII(A)(1[–]2).  Lastly, if the inmate is dissatisfied with the decision of the Division Chief, [s]he may appeal to the Central Office Review Committee ("CORC").  Id. § IX(A).  The CORC's disposition constitutes the final decision on the grievance.  Id.

Massey I, 2021 WL 4943564, at *7.  The IGRP requires that "[a]n inmate must use the grievance process to obtain a final response from the [DOC] regarding any grievance[.]"  IGRP § V(K).  An inmate's prediction that her grievance will be denied, "even if wholly reasonable, does not

---

therefore    the    governing    grievance    procedure    for    Ms.    Mercado's    claims.    See https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf    (last    visited Nov. 4  2025).

warrant depriving the prison administration of the opportunity to address the claim in the first instance, a paramount goal of the PLRA." Johnson v. Killian, No. 07 Civ. 6641 (LTS) (DFE), 2009 WL 1066248, at *5 (S.D.N.Y. Apr. 21, 2009); see Dixon v. Laboriel, No. 01 Civ. 3632 (LAP), 2010 WL 2365860, at *4 (S.D.N.Y. June 10, 2010) (explaining that "the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of h[er] obligation to exhaust such remedies"), aff'd, 433 F. App'x 48 (2d Cir. 2011) (summary order).

In this District, "[i]t is well-established that, even if an inmate does not receive a response to his grievance, he fails to exhaust administrative remedies if he does not avail himself of the available appeals process." Leneau, 2018 WL 583120, at *3 (citing Martinez v. Schriro, No. 14 Civ. 3965 (KMW) (RLE), 2017 WL 87049, at *2 (S.D.N.Y. Jan. 9, 2017)); see Tyler v. Argo, No. 14 Civ. 2049 (CM) (DCF), 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014) ("It is well settled that an inmate who receives no response to his grievance must continue with the next steps in the grievance process."). It is equally well-settled that "proper exhaustion" means that an inmate must "not only file an initial grievance, but also [] exhaust h[er] claims through each level of the specified grievance process." Massey I, 2021 WL 4943564, at *7; see Perez v. City of New York, No. 14 Civ. 7502 (LGS), 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (noting that DOC "inmate must take each of the four [IGRP] steps to exhaust the administrative grievance process") (citing Tyler, 2014 WL 5374248, at *4); Banks v. Mental Health Clinicians, No. 11 Civ. 7848 (LAP), 2012 WL 6201259, at *3–4 (S.D.N.Y. Dec. 11, 2012) (granting motion to dismiss claims of Rikers Island inmate who filed grievance but failed to appeal and therefore did not exhaust IGRP process under PLRA); Graham v. Cochran, No. 96 Civ. 6166 (LTS) (RLE), 2002 WL 31132874, at *6 (S.D.N.Y.

Sept. 25, 2002) ("Courts have interpreted the [PLRA] to require complete exhaustion in accordance with institutional procedures.").

### c. Excusing Exhaustion Procedures

The Court may excuse an inmate's failure to exhaust only on a finding that the administrative remedies were "unavailable" to him.  Massey I, 2021 WL 4943564, at *8 (quoting Girodes v. City of New York, No. 17 Civ. 6789 (RWS), 2018 WL 3597519, at *4 (S.D.N.Y. July 26, 2018)).  The Supreme Court explained in Ross v. Blake the three circumstances in which administrative remedies may be deemed unavailable:

> First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

578 U.S. at 643–44.  With this guidance, the Second Circuit has explained that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." Lucente, 980 F.3d at 311–12.

### B. Application

In the Motion, Officer Haidome argues that Ms. Mercado has failed to exhaust her First Amendment Claim, which, in the alternative, fails as a matter of law.  (Dkt. Nos. 33; 45).  We address both arguments below.

### 1. **Ms. Mercado Failed to Exhaust Her First Amendment Claim**

As explained above, (see § II.A, supra), Ms. Mercado's First Amendment Claim is based on the Incident, which occurred on December 20, 2023. (Dkt. No. 1 at 4). Ms. Mercado submitted the Grievance on December 21, 2023, the day after the Incident, and made the 311 Complaints on December 28, 2023, January 5, 2024, and January 10, 2024. (Dkt. Nos. 31-1 at 8:17–19, 18:14–22; 32 at 2 ¶ 7; 39-1; 39-2; 39-5). Neither Officer Haidome's evidence nor the Opposition demonstrate, however, that Ms. Mercado completed the appeals process under the IGRP, "which is necessary for a finding that [s]he exhausted [her] administrative remedies." Brown v. City of New York, No. 21 Civ. 4632 (PGG) (SLC), 2023 WL 2908661, at *11 (S.D.N.Y. Jan. 30, 2023), adopted by, 2023 WL 2496089 (S.D.N.Y. Mar. 14, 2023). Ms. Mercado admits that she did not file an appeal from the Disposition or otherwise "follow up" on the Grievance. (Dkt. Nos. 31-1 at 8:17–25, 18:20–22; 32 at 2 ¶ 7).

In addition, Ms. Mercado delivered the Complaint to OBCC officials for mailing on January 17, 2024, just 27 days after she filed the Grievance, which, especially given the intervening year-end holidays, did not afford the DOC enough of an opportunity to complete the IGRP process. (Dkt. Nos. 1 at 4; 39-1). See Cary v. City of New York, No. 17 Civ. 6443 (RWS), 2018 WL 1581988, at *3 (S.D.N.Y. Mar. 27, 2018) (dismissing for failure to exhaust IGRP procedures where complaint was submitted less than 30 days after incident); see also Bush v. City of New York, No. 19 Civ. 5319 (AT) (BCM), 2021 WL 1198321, at *2-3 (S.D.N.Y. Mar. 30, 2021) ("Courts in this district have noted that the grievance process may take several weeks to complete.").

Finally, here, DOC did investigate Ms. Mercado's Grievance and issued the Disposition on June 14, 2024, (Dkt. No. 39-2), from which she could have appealed to the commanding officer,

16

then to the division chief, and then to the CORC. See Massey I, 2021 WL 4943564, at *7. Ms. Mercado concedes, however, that she did not do so. (Dkt. Nos. 31-1 at 8:17–25, 18:20–22; 32 at 2 ¶ 7). Accordingly, she failed to exhaust the IGRP procedures and the PLRA bars her First Amendment Claim.

Construing the Opposition "generously," Brown v. City of New York, 2023 WL 2908661, at *12, Ms. Mercado could be arguing that she should be excused from the PLRA exhaustion requirement on the grounds that she did not receive a timely response to the Grievance and did not refuse to sign it, such that the administrative remedies under the IGRP "should be considered unavailable to" her under Ross v. Blake. See 578 U.S. at 643–44; Massey I, 2021 WL 4943564, at *9 (interpreting pro se inmate to be asserting that exhaustion was excused because administrative remedies were unavailable); accord Brown v. City of New York, 2023 WL 2908661, at *12. We find, however, that Ms. Mercado has failed to demonstrate that the IGRP procedures were unavailable to her, as is necessary to justify excusing her from the exhaustion requirement under the PLRA. Ms. Mercado admits that she filed the Grievance, and she attaches to her Opposition a copy of the Disposition, which reflects that the DOC investigated and resolved her claim (albeit in a manner with which she disagrees). (Dkt. Nos. 39-1 at 8:17–19; 39-2). Ms. Mercado also acknowledged that she did not appeal or otherwise follow up on the Grievance. (Dkt. No. 39-1 at 8:20–25, 10:18–22, 18:13–22). The record therefore demonstrates that the IGRP procedures were not only available to Ms. Mercado, but that she "knew how to employ them and simply chose not to follow them to completion." Brown v. City of New York, 2023 WL 2908661, at *12; see Perez, 2015 WL 3652511, at *4 (finding that plaintiff's "timely filing his grievance indicated that the procedure was available to him.") (citation modified). To the

extent that the DOC took several months to investigate the Grievance and issue the Disposition or did not respond to her 311 Complaints, that similarly does not "render the IGRP administrative procedure unavailable." Taylor, 849 F. App'x at 8; see Lopez v. Cipolini, 136 F. Supp. 3d 570, 584 (S.D.N.Y. 2015) (finding that any delay by officials in responding to grievance did not excuse failure to exhaust remaining grievance procedures).  Finally, nothing in Ms. Mercado's Complaint or Opposition suggests that "any official prevented her from filing a grievance or completing the remaining steps in the IGRP," Perez, 2015 WL 3652511, at *4 (citation modified), nor can we "discern any other permissible ground to excuse [her] failure to comply with the IGRP." Brown v. City of New York, 2023 WL 2908661, at *12.  Accordingly, Ms. Mercado's failure to exhaust her administrative remedies "cannot be excused on the ground that a meaningful avenue for exhaustion was unavailable." Massey I, 2021 WL 4943564, at *11.

Because Ms. Mercado did not exhaust the IGRP administrative remedies and she is not excused from the exhaustion requirement, the PLRA bars her First Amendment Claim and Officer Haidome is entitled to summary judgment on that basis.

### 2.  Ms. Mercado's First Amendment Claim Fails as a Matter of Law

In the alternative, Officer Haidome argues that Ms. Mercado's First Amendment Claim fails as a matter of law for three reasons: (i) his "words alone without any appreciable injury do[] not give rise to a constitutional violation;" (ii) Ms. Mercado's religious practice "was not chilled and resumed both during the [] [I]ncident and thereafter;" and (iii) he is entitled to qualified immunity.  (Dkt. No. 33 at 7–8).

### a. First Amendment Claims in the Prison Context

As an initial matter, we note that Officer Haidome's Motion lacks a discussion of the current legal standard for First Amendment free exercise claims in the prison context, (see Dkt. No. 33 at 7), which, as explained below, the Second Circuit recently clarified. We provide the necessary overview here for completeness and for the parties' benefit.

The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I, XIV. "It is well-settled that despite incarceration, prisoners, including pre-trial detainees, retain their right to religious freedom and are entitled to reasonable accommodation of their religious beliefs, consistent with the needs of prison security." Scott v. Howard, No. 15 Civ. 1000A(F), 2018 WL 4765120, at *3 (W.D.N.Y. Aug. 20, 2018) (citing Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006)); see Bell v. Wolfish, 441 U.S. 520, 545 (1979) (explaining that "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison"). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Est. of Shabazz, 482 U.S. 342, 348 (1987). The Second Circuit has noted that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003).

"In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from the administration of the penal system.'" Kravitz v. Purcell, 87 F.4th 111, 127 (2d Cir. 2023) (quoting Benjamin v.

19

Coughlin, 905 F.2d 571, 574 (2d Cir. 1990)).  "Therefore, an infringement of the free exercise of religion is permissible only if it is 'reasonably related to legitimate penological interests.'" Kravitz, 87 F.4th at 128 (quoting Benjamin, 905 F.2d at 574).

For three decades, it was an "'open question'" in the Second Circuit whether the "'substantial burden test' — which requires plaintiffs to plead, and ultimately prove, that the disputed conduct substantially burdened their sincerely held religious beliefs — applied to free exercise claims." Brown v. Annucci, Nos. 23 Civ. 6056 (CS), et al., 2025 WL 415814, at *4 (S.D.N.Y. Feb. 6, 2025) (quoting Kravitz, 87 F.4th at 119, 122).  In November 2023 — just three weeks before the Incident here — the Second Circuit announced that it was joining other circuits in holding that "a prisoner claiming a violation of the right to the free exercise of religion under § 1983 need not make a showing of substantial burden." Kravitz, 87 F.4th at 122; see id. at 119–27 (analyzing cases that required proof of "substantial burden" and explaining why, for § 1983 First Amendment claim, "there is no requirement to show that the governmental burden on religious beliefs was 'substantial'"); see also Baltas v. Chapdelaine, 153 F.4th 328, 339 n.8 (2d Cir. 2025) (noting that Second Circuit "recently 'join[ed] those circuits that have held that an inmate does not need to establish a substantial burden in order to prevail on a free exercise claim under § 1983" and noting that holding "was not clearly established" before Kravitz) (quoting Kravitz, 87 F.4th at 125).  The Second Circuit's holding in Kravitz means that, now, in analyzing a prisoner's First Amendment free exercise claim under section 1983:

> "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]."

Kravitz, 87 F.4th at 128 (quoting Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988)).

In addition, under Section 1983, a plaintiff must allege that each defendant was "personally or directly involved in the [alleged] violation." Harris v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *9 (S.D.N.Y. Apr. 3, 2008); see Thomas v. Connolly, No. 10 Civ. 2401 (PAC) (MHD), 2012 WL 3758457, at *10 (S.D.N.Y. Aug. 30, 2012) (explaining that proof of each defendant's personal involvement is "a prerequisite to finding liability on a claim for damages brought under [S]ection 1983."). A defendant's involvement may be established by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of the inmates by failing to act on information indicating that unconstitutional acts were occurring.

Connolly, 2012 WL 3758457, at *11 (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). "In the context of the Free Exercise Clause, [the Second Circuit has] explained that liability depends on an officer-defendant acting with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice." Kravitz, 87 F.4th at 129 (citing Wiggins v. Griffin, 86 F.4th 987, 997–98 (2d Cir. 2023)). An officer's "isolated acts of negligence" do not violate a prisoner's free exercise of religion. Wiggins, 86 F.4th at 997.

### b. **Application**

#### i.    **Elements of First Amendment Claim**

As an initial matter, Ms. Mercado undoubtedly has the right to exercise "the beliefs professed by her that are sincerely held and in her own scheme of things, religious." Jackson v.

Mann, 196 F.3d 316, 320 (2d Cir. 1999) (citation modified); accord Pierce v. McCarthy, 21 Civ.

1301 (TJM) (DJS), 2025 WL 848511, at *3 (N.D.N.Y. Feb. 10, 2025), adopted by, 2025 WL 843760

(N.D.N.Y. Mar. 18, 2025).  Indeed, in the Motion, Officer Haidome does not question the religious

nature or sincerity of Ms. Mercado's Wiccan beliefs.  (See Dkt. Nos. 33; 45).  With respect to the

other two elements of her First Amendment Claim, however, Ms. Mercado has failed to raise a

triable question of fact and therefore summary judgment for Officer Haidome is appropriate.

As to the second element — infringement — we presume for purposes of the Motion that

Officer Haidome made disparaging remarks about her Wiccan beliefs during the Incident.  (Dkt.

Nos. 1 at 4; 31-1 at 6).  The undisputed facts establish, however, that Officer Haidome did not

infringe Ms. Mercado's right to free exercise of her Wiccan religion for three reasons.  First,

Ms. Mercado admits that on the date of the Incident, "she fin[]ished her prayers[.]"  (Dkt. No. 41

at 2; see Dkt. No. 31-1 at 6:13 ("when I was done with my prayers")).  In addition, she admits that

since the Incident she has continued to pray "at nighttime" — i.e., the same time she was praying

when the Incident occurred.  (Dkt. No. 31-1 at 12:18–19).  Ms. Mercado's continued ability to

pray distinguishes her from the plaintiff in Kravitz, whose First Amendment claim survived

summary judgment given evidence that corrections officers prevented him from "observ[ing] his

religious holiday" altogether and "obstructed all communal prayer" on more than one occasion.

87 F.4th at 128; see also Cisse v. Medbury, No. 23 Civ. 697 (GLS) (ML), 2023 WL 12100477, at *14

(N.D.N.Y. July 24, 2023) (finding that single incident of missed religiously compliant meal "without

more, does not suggest a constitutional violation").  Thus, as a matter of law, Officer Haidome's

inappropriate remarks do not give rise to a constitutional violation.  See also Purcell v. Coughlin,

790 F.2d 263, 265 (2d Cir. 1986) (finding that prison guard's derogatory remarks did not give rise

to an "appreciable" constitutional injury); Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006) (finding that "verbal intimidation does not rise to the level of a constitutional violation").

Second, and relatedly, because Ms. Mercado "fin[]ished" her prayers after the Incident and has continued to pray (Dkt. Nos. 31-1 at 12:15–16; 41 at 2), as a matter of law she cannot demonstrate that Officer Haidome "knew or should have known that [he] had denied [her] access" to her religious practice. Baltas, 153 F.4th at 340 n.9; see Wiggins, 86 F.4th at 997 (explaining that officer's "isolated acts of negligence" do not violate a prisoner's free exercise right); White v. Ezekwe, No. 22 Civ. 4451 (PMH), 2023 WL 8564251, at *6 (S.D.N.Y. Dec. 11, 2023) ("Negligent infringement of a prisoner's right to religious freedom is not actionable under the First Amendment.").

Third, while she testified that she does not now "pray in the morning," (Dkt. No. 31-1 at 12:16–17), there is no evidence in the record that she prayed in the morning before the Incident or that the Wiccan faith requires her to do so. See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y.S. Dep't of Corr. & Cmty. Supervision, 16 F.4th 67, 84–85 (2d Cir. 2021) (finding that scheduling change of religious meetings from Saturdays to weekdays did not violate First Amendment where plaintiffs did not show that "Saturdays have religious significance"); see also Smith v. Halstead, No. 24 Civ. 6855 (CS), 2025 WL 1938813, at *1 (S.D.N.Y. July 15, 2025) (requiring inmate plaintiff asserting First Amendment violation to "explain[] in [] detail what his religious beliefs require").

Given the undisputed facts that Ms. Mercado continued praying on the date of the Incident and has continued to pray since, no reasonable juror could find the second required

23

element of her claim — that Officer Haidome infringed her First Amendment right to free exercise of her Wiccan beliefs.  See Pierce, 2025 WL 848511, at *3 (granting summary judgment for defendants on First Amendment claim where inmate "concede[d] that he is free to and does contact, consult with, and be visited by a religious leader of his choosing.").

As to the third element, as inappropriate as Officer Haidome's remarks were, Ms. Mercado has failed to show that the reason he was at her cell at the time of the Incident — the headcount procedure — lacks a legitimate penological objective.  Four factors are relevant to whether an action or policy is reasonably related to legitimate penological interests: "[1] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [2] whether prisoners have alternative means of exercising the burdened right; [3] the impact on guards, inmates, and prison resources of accommodating the right; and [4] the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests."  Smith, 2025 WL 1938813, at *1.

With these factors in mind, headcounts are so ubiquitous in the detention setting that we have been unable to find any case discussing them in any substance in the First Amendment context.  See, e.g., Balentine v. Anzalone, No. 21 Civ. 1383 (LEK) (CFH), 2023 WL 4905093, at *6 (N.D.N.Y. July 12, 2023) (noting "normal procedures of counting [] incarcerated individuals"); Cooper v. Sheahan, No. 12 Civ. 1227S (WMS), 2022 WL 2974029, at *2 (W.D.N.Y. July 27, 2022) (noting that New York State prison facilities "conduct regular counts to ensure that all inmates are accounted for").  We also observe that the rules that govern the DOC contemplate headcounts as a routine element of maintaining order, safety of inmates and staff, and security, see 39 R.C.N.Y. § 1-03(c)(5) (Grade II count procedures), all of which are legitimate penological

24

interests.  See Hall v. Ekpe, 408 F. App'x 385, 387–88 (2d Cir. 2010) (summary order) (recognizing security as a "valid penological interest[]"); Jova v. Smith, 346 F. App'x 741, 744 (2d Cir. 2009) (summary order) (recognizing "legitimate penological interests in maintaining institutional safety, security, and order"); Walker v. Artus, 998 F. Supp. 2d 18, 26–27, 37–39 (N.D.N.Y. 2014) (granting summary judgment for prison officials where restriction on religious practice was reasonably related to facility safety and security).  In other words, even if Ms. Mercado had shown that Office Haidome restricted her prayer during headcount — which she has not — such a policy would be reasonably related to legitimate penological interests.

Accordingly, viewing the facts in the light most favorable to Ms. Mercado and drawing all permissible inferences in her favor, no rational jury could find that Ms. Mercado established the second and third elements of her First Amendment Claim and therefore, Officer Haidome is entitled to summary judgment.

### ii.    Qualified immunity

Officer Haidome argues that he is entitled to "qualified immunity because it was not clearly established that making the alleged statement(s) alone would constitute a constitutional violation."  (Dkt. No. 33 at 7–8).  "[P]rison officials performing tasks entrusted to their discretion typically 'are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Ford, 352 F.3d at 596 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A defendant is entitled to qualified immunity "'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate the law.'"  Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting

25

Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)). District courts may "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances of the particular case at hand." Wagschal v. Skoufis, 442 F. Supp. 3d 612, 624 (S.D.N.Y. 2020).

As to the first prong, "[i]n determining whether a right was clearly established at the time defendants acted, we examine whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." City & Cnty. of San Francisco, Cal. v. Sheehan, 575 U.S. 600, 613 (2015). Instead, "the clearly established law must be 'particularized' to the facts of the case." White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam).

As to the second prong, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999). Thus, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015). Summary judgment for a prison official on the ground of qualified immunity is appropriate "only if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in her favor, no rational jury could fail to conclude that it was objectively

reasonable for the defendant to believe that he was acting in a fashion that did not violate a clearly established right." Williams v. Greifinger, 97 F.3d 699, 703 (2d Cir. 1996) (citation modified).

Exercising our "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first[,]" Coollick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012), we focus on the first prong. For purposes of determining qualified immunity, an incarcerated person's right to the free exercise of religion is "clearly established." Ford, 352 F.3d at 597. As explained above, however, even at that very generalized level, Ms. Mercado has failed to establish "any burden on [her] sincerely held religious beliefs[,]" so Officer Haidome's conduct "did not violate clearly established law[.]" Recore, 317 F.3d at 197. Qualified immunity therefore provides an alternative basis on which to grant Officer Haidome summary judgment with respect to her First Amendment Claim. See Baltas, 153 F.4th at 340 (finding that defendants were entitled to qualified immunity as to inmates who failed to show any burden on exercise of religious belief).[12]

\* \* \*

Ms. Mercado failed to exhaust her First Amendment Claim and has not shown that she should be excused from exhaustion, so the PLRA bars her claim. (See §§ III.A.3 & B.1, supra). In the alternative, the undisputed facts demonstrate that Ms. Mercado has not established two of

---

[12] Because qualified immunity applies based on the first prong, we need not reach the second prong. See Coollick, 699 F.3d at 219–20 (noting that "there are positive attributes to deciding a case under prong one"). Accordingly, we do not consider whether Officer Haidome should reasonably have been aware of the Second Circuit's elimination of the "substantial burden" requirement in Kravitz three weeks before the Incident. Cf. Gibson v. Rearden, No. 22 Civ. 723 (AJB) (DJS), 2025 WL 2527532, at *8 (N.D.N.Y. Aug. 11, 2025) (explaining that, because Kravitz was not clearly established law when alleged First Amendment violations occurred in 2022, summary judgment based on qualified immunity was warranted), adopted by, 2025 WL 2505539 (N.D.N.Y. Sept. 2, 2025).

the three required elements of her First Amendment Claim.  (See § III.B.2, supra).  Finally, Officer

Haidome is entitled to qualified immunity.  (See § III.B.2.b.ii, supra).  Accordingly, on each of these

grounds, Officer Haidome is entitled to summary judgment.

**IV.CONCLUSION**

For the reasons set forth above, we respectfully recommend that the Motion be

**GRANTED** and Ms. Mercado's Complaint be **DISMISSED WITH PREJUDICE**.

Dated:        New York, New York
              November 5, 2025


_____
(SARAH L. CAVE
**United States Magistrate Judge**


*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding

three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party

may respond to another party's objections within fourteen (14) days after being served with a

copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with

the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for

an extension of time for filing objections must be addressed to Judge Torres.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF**

**OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ.

28

P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  If Ms. Mercado does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, she may request copies from Defendant's counsel.  <u>See</u> Local Civ. R. 7.2.